2011 UT App 257

**William YORK and Nathan York, Plaintiffs and Appellant,**

v.

**PERFORMANCE AUTO, INC. and James K. Slavens, Defendants and Appellee.**

No. 20100783–CA.

Court of Appeals of Utah.

Aug. 4, 2011.

See also, 233 P.3d 500.

William York, Delta, Appellant Pro Se.

James K. Slavens, Fillmore, Appellee Pro Se.

Before Judges ORME, VOROS, and CHRISTIANSEN.

## OPINION

VOROS, Judge:

¶1 Appellant William York's appeal was dismissed by per curiam decision of this court on January 27, 2011. *See York v. Slavens,* 2011 UT App 25 (per curiam) (vacated by order dated April 6, 2011). That decision dismissed the appeal without prejudice on the ground that the order appealed from was not final and, consequently, that this court lacked jurisdiction. *See id.* ¶3. York filed a "Rule 60(b) Motion To Reinstate Appeal." We construed this motion as a petition for rehearing filed pursuant to rule 35 of the Utah Rules of Appellate Procedure. *See* Utah R.App. P. 35(a); *see also id.* R. 2. At the request of the court, Appellee James K. Slavens filed a response.[1] We then granted the petition and, by order dated April 6, 2011, vacated our decision in *York.*[2] Having

---

1. Slavens contends that York's motion lacks the certificate required by rule 35(a) of the Utah Rules of Appellate Procedure. That rule states, "Counsel for petitioner must certify that the petition is presented in good faith and not for delay." Utah R.App. P. 35(a). Slavens further argues that York's motion was not brought in good faith. Slavens is correct that York's pro se motion lacks the required certification. However, York's motion is not frivolous and in fact draws the court's attention to relevant case law arguably in conflict with our per curiam decision. For this reason, and because of York's pro se status, we deem his motion to be in substantial compliance with rule 35(a). For the same reason, we deny Slavens's rule 33 request for attorney fees and costs associated with this petition for rehearing. *Id.* R. 33(a).

2. York filed multiple motions challenging this process. These are hereby denied.

considered York's motion and Slavens's response, we now reaffirm our earlier decision.

¶2 For reasons stated in *York*, if the trial court has not yet entered a final order, this court lacks jurisdiction and must dismiss the appeal. *See York*, 2011 UT App 25, ¶2 (citing *Loffredo v. Holt*, 2001 UT 97 ¶¶10, 15, 37 P.3d 1070; *Bradbury v. Valencia*, 2000 UT 50 ¶9, 5 P.3d 649); *see also* Utah R.App. P. 3(a) ("An appeal may be taken from . . . all final orders and judgments . . . ."). The case at bar has generated several orders, but we see only two possible candidates for a final order: the May 28, 2009 order dismissing the only served defendant, and the August 11, 2010 order holding York in contempt.

### I. The May 28, 2009 Order of Dismissal

¶3 York and his co-plaintiff filed the complaint in 2009. The complaint named as defendants Performance Auto, Inc.; "Karl"; Slavens; and ten John Does. Only Slavens was served.[3] On May 28, 2009, the 120th day after the complaint was filed, the trial court entered an order dismissing Slavens as a defendant in this case. York filed a timely notice of appeal from this order.

¶4 "For an order or judgment to be final, it must dispose of the case as to all the parties, and finally dispose of the subject-matter of the litigation on the merits of the case. In other words, a judgment is final when it ends the controversy between the parties litigant." *Bradbury*, 2000 UT 50 ¶9, 5 P.3d 649 (citations and internal quotation marks omitted); *see also* Utah R. Civ. P. 54(b). The question here is whether named but unserved defendants are "parties litigant" for purposes of this rule.

¶5 York contends that they are not. He draws our attention to *Otteson v. Department of Human Services*, 945 P.2d 170 (Utah Ct.App.1997). In *Otteson*, this court held that "[t]he dismissal of all defendants who had been served with process and brought within the district court's jurisdiction was a final and appealable judgment." *Id.* at 172. Failure to dismiss additional named but unserved defendants "did not leave claims pending in the district court or prevent the entry of final judgment since the unserved defendants were not made parties to the action prior to dismissal." *Id.* (citing *Bristol v. Fibreboard Corp.*, 789 F.2d 846, 847 (10th Cir.1986) (per curiam)).

¶6 *Bartel v. DeBry*, 2001 UT App 321U, 2001 WL 1287048 (mem.) (per curiam), follows the holding of *Otteson*. The plaintiff, Bartel, served some but not all defendants within 120 days of the filing of his complaint in 1992. *See id.* ¶2. By 1999 all served defendants had either been dismissed from the case or had a default judgment entered against them. *See id.* Six months after entry of a default judgment against the last served defendant, Bartel served one of two remaining unserved defendants. *See id.* In 2001 the trial court dismissed all claims against both the served and the unserved defendants. *See id.* Following *Otteson*, this court held that the 1999 default judgment against the last remaining served defendant "was the final judgment and commenced the running of the appeal time." *Id.* ¶4. Because the two remaining defendants had not yet been served, the 1999 order "resolved all claims between the named defendants who had been served and actually made parties and it ended the controversy before the court." *Id.* The "belated service of [one of the two defendants unserved as of 1999] did not revive the previously dismissed case in order to allow the appeal." *Id.*

¶7 *Otteson* and *Bartel* stand for the proposition that an order dismissing all served defendants, though fewer than all named defendants, is a final judgment for purposes of appeal. We now consider whether these two cases remain good law after our supreme court's decision in *Hunter v. Sunrise Title Co.*, 2004 UT 1, 84 P.3d 1163.

---

**3.** York attempted to effect service on Performance Auto by serving Slavens in his capacity both as a defendant and as attorney or agent for Performance Auto. *See* Utah Code Ann. § 78B–3–204 (2008); Utah R. Civ. P. 4(d)(1)(A). The trial court determined that this service was invalid and quashed the service. York challenges this ruling on appeal. Because any challenge is premature if a final judgment was not entered, we do not address it.

¶ 8 *Hunter* construed rule 4(b) of the Utah Rules of Civil Procedure.[4] *See* 2004 UT 1, ¶ 7, 84 P.3d 1163. Rule 4(b) provides that, where the action is commenced by filing a complaint, the summons and complaint "shall be served no later than 120 days after the filing of the complaint unless the court allows a longer period of time for good cause shown." Utah R. Civ. P. 4(b)(i). "If the summons and complaint are not timely served, the action shall be dismissed, without prejudice on application of any party or upon the court's own initiative." *Id.* Dismissal is not automatic at the expiration of 120 days but "depends upon some action, namely, the 'application of any party or upon the court's own initiative.'" *Callahan v. Sheaffer,* 877 P.2d 1259, 1262 (Utah Ct.App.1994) (quoting Utah R. Civ. P. 4(b)) (contrasting the current version with the earlier version of the rule, which provided that the cause of action was "deemed dismissed"). Rule 4(b) also addresses the circumstance of multiple defendants: where a plaintiff has timely served some but not all defendants, "the plaintiff may proceed against those served," and "the others may be served or appear at any time prior to trial." Utah R. Civ. P. 4(b)(ii).

¶ 9 The *Hunter* court did not address the question of finality directly. *See generally Hunter,* 2004 UT 1, 84 P.3d 1163. However, it did examine the status of a case after all served defendants, but not all named defendants, were dismissed. *See id.* ¶ 11. The plaintiff, Hunter, sued several defendants. *See id.* ¶¶ 2–3. Two were timely served but later dismissed. *See id.* Eleven months later, Hunter served the lone remaining defendant, Sunrise Title. *See id.* ¶ 5. The trial court dismissed the complaint against Sunrise Title on the ground that rule 4(b)'s "any time prior to trial" provision did not apply where the served defendants had all been dismissed. *See id.*

¶ 10 The supreme court affirmed. *See id.* ¶ 1. It held that once the served defendants were dismissed, "Hunter's original three-defendant lawsuit became a single-defendant action, with Sunrise Title the sole remaining defendant. Consequently, the co-defendant provision of rule 4(b) allowing service 'at any time prior to trial' ceased to apply...." *Id.* ¶ 10. "Where all *served* co-defendants are formally dismissed," the court held, "rule 4(b) requires service upon at least one of the remaining *unserved* defendants within 120 days of filing of the complaint, absent the district court's grant of an extension for good cause." *Id.* ¶ 11. *Hunter* also states that the plaintiff must "petition the district court for an extension prior to the dismissal of the served co-defendants, if the 120–day period has already expired." *Id.* ¶ 12. Because the plaintiff in *Hunter* did neither, the trial court properly dismissed the complaint. *See id.*

¶ 11 To resolve the case at bar, we must determine whether *Hunter* effectively overruled *Otteson* and *Bartel. See State v. Menzies,* 889 P.2d 393, 399 n. 3 (Utah 1994) ("Vertical stare decisis ... compels a court to follow strictly the decisions rendered by a higher court."). As noted above, *Otteson* and *Bartel* hold that an order dismissing all served co-defendants is a final judgment because any remaining unserved defendants are not legally parties to the dispute. This holding is irreconcilable with *Hunter. Hunter* squarely holds that "[w]here all *served* co-defendants are formally dismissed," leaving one named but unserved defendant, the action is converted into "a single-defendant action." 2004 UT 1, ¶¶ 10–11, 84 P.3d 1163. If, as *Hunter* holds, dismissal of all served co-defendants converts the action into one against the remaining unserved defendant, it

---

4. Rule 4(b) reads as follows:

(b)(i) *Time of service.* In an action commenced under Rule 3(a)(1), the summons together with a copy of the complaint shall be served no later than 120 days after the filing of the complaint unless the court allows a longer period of time for good cause shown. If the summons and complaint are not timely served, the action shall be dismissed, without prejudice on application of any party or upon the court's own initiative.

(b)(ii) In any action brought against two or more defendants on which service has been timely obtained upon one of them,

(b)(ii)(A) the plaintiff may proceed against those served, and

(b)(ii)(B) the others may be served or appear at any time prior to trial.

Utah R. Civ. P. 4(b).

does not "dispose of the case as to all the parties," *see Bradbury v. Valencia,* 2000 UT 50, ¶ 9, 5 P.3d 649. It is therefore not a final judgment. Accordingly, insofar as *Otteson* and *Bartel* are inconsistent with *Hunter,* we conclude that they have been overruled by implication.[5]

¶ 12 Under *Hunter,* the order of May 28, 2009, dismissing Slavens as a defendant in this case is not a final order. By dismissing the only served co-defendant, the trial court did not dispose of the case but converted it into an action against the remaining unserved defendants. It may well be that service on the unserved defendants is now impracticable or legally foreclosed. Nevertheless, until the trial court enters an order concluding the litigation as to all litigants, including unserved defendants, York has no final order from which to appeal.

## II. The August 11, 2010 Order of Contempt

■ ¶ 13 On August 11, 2010, the trial court entered an order of contempt against York.[6] York filed a timely notice of appeal "from all the orders and judgments entered in this action—the final being signed on Aug 11, 2010." As noted above, the May 28, 2009 order of dismissal is not final. Nevertheless,

York would still be able to appeal from the August 11, 2010 order of contempt if that order qualified as a final, appealable order. However, we conclude that it does not.

■ ¶ 14 The appealability of a contempt order depends on the nature of the order. "There are two types of contempt: criminal and civil." *Gardiner v. York,* 2010 UT App 108, ¶ 31, 233 P.3d 500 (citing *Von Hake v. Thomas,* 759 P.2d 1162, 1167 & n. 2 (Utah 1988)). Factors indicating that an order of contempt is criminal include the following: "its purpose is to vindicate the court's authority, as by punishing an individual for disobeying an order," *Von Hake,* 759 P.2d at 1168; *see also International Union v. Bagwell,* 512 U.S. 821, 828, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994); *Gompers v. Bucks Stove & Range Co.,* 221 U.S. 418, 441–43, 31 S.Ct. 492, 55 L.Ed. 797 (1911); the sanction is fixed, *Bagwell,* 512 U.S. at 828–29, 114 S.Ct. 2552; *Gompers,* 221 U.S. at 442, 31 S.Ct. 492; *Von Hake,* 759 P.2d at 1168–69 & n. 5; the sanction is "imposed retrospectively for a 'completed act of disobedience,'" *Bagwell,* 512 U.S. at 828–29, 114 S.Ct. 2552 (quoting *Gompers,* 221 U.S. at 443, 31 S.Ct. 492); *see also Von Hake,* 759 P.2d at 1168 & n. 5; and the order may be captioned sepa-

---

5. A majority of federal circuits follow the arguably more pragmatic rule that named but unserved defendants are not litigants for purposes of the final judgment rule. *See* 10 James Wm. Moore, Moore's Federal Practice § 54.25[2] (3d ed. 2011) ("[I]f the unadjudicated claims relate only to defendants who were not served with process and thus never properly made parties, it is generally held that an order disposing of the interests of the parties who actively participated in the litigation is final despite the absence of a Rule 54(b) certificate."); 15A Wright & Miller, Federal Practice & Procedure: Jurisdiction § 3914.7 (2d ed. 1992) ("It is widely agreed that defendants who have not been served with process are not counted; a disposition as to all those who have been served is final.").

As explained above, under *Hunter v. Sunrise Title Co.,* 2004 UT 1, 84 P.3d 1163, a trial court must formally dismiss unserved defendants. This practice is consistent with the clarity and precision our supreme court has required before even a judgment adjudicating all claims against all parties qualifies as final. *See Giusti v. Sterling Wentworth Corp.,* 2009 UT 2, ¶¶ 31–36, 201 P.3d 966 (holding that to trigger the appeal period, a trial court's order must comply with the

requirements of rule 7(f)(2) of the Utah Rules of Civil Procedure, even if the finality of the order is otherwise "clearly discernable"); *see also Code v. Utah Dep't of Health,* 2007 UT 43, ¶ 6, 162 P.3d 1097 ("We see no benefit to a system in which parties must guess, on a case-by-case basis, whether a judge's language in a memorandum decision 'implie[s],' 'invite[s],' or 'contemplate[s]' further action by the parties." (alterations in original) (citation omitted)).

6. On May 27, 2009, the trial court entered identical contempt orders in the present case and in *Gardiner v. York,* 2010 UT App 108, 233 P.3d 500, another case in which York and Slavens—as an attorney for York's opponent Gardner—were involved. *See id.* ¶¶ 1, 8. We reversed and remanded the contempt order in *Gardiner,* holding that a criminal contempt order had been imposed without sufficient attention to due process protections. *See id.* ¶ 48. In light of the holding of *Gardiner,* the trial court vacated its May 27, 2009 contempt order in the present case and provided notice and a hearing before entering the August 11, 2010 contempt order. We concern ourselves only with the August 11, 2010 order.

rately, *see Gompers,* 221 U.S. at 444–46, 31 S.Ct. 492; *Von Hake,* 759 P.2d at 1168 n. 4.

¶ 15 Factors indicating that an order of contempt is civil include the following: its purpose is remedial, either to coerce compliance with a court order "or to compensate an aggrieved party for injuries resulting from [non-compliance] with an order," *Von Hake,* 759 P.2d at 1168; *see also Bagwell,* 512 U.S. at 827–30, 114 S.Ct. 2552; *Gompers,* 221 U.S. at 441–42, 31 S.Ct. 492; the order is contingent, often confining the contemnor until he or she purges the contempt through compliance with an order of the court, thereby allowing the contemnor to "'carr[y] the keys of his prison in his own pocket,'" *Bagwell,* 512 U.S. at 827–29, 114 S.Ct. 2552 (quoting *Gompers,* 221 U.S. at 442, 31 S.Ct. 492); *see also Gompers,* 221 U.S. at 441–44, 31 S.Ct. 492; *Von Hake,* 759 P.2d at 1168 & n. 5; and the order typically bears the caption of the underlying case, *see Gompers,* 221 U.S. at 444–46, 31 S.Ct. 492; *Von Hake,* 759 P.2d at 1168 n. 4.

¶ 16 The distinction between criminal and civil contempt is relevant here because "an order finding one guilty of criminal contempt is generally considered to be a final order ... and appealable as a matter of right," whereas "an order finding one to have committed a civil contempt is considered interlocutory and not appealable as a matter of right." *Von Hake,* 759 P.2d at 1167. However, our supreme court has treated an order of civil contempt as final and appealable where it "arose out of supplemental proceedings after a final judgment" and would otherwise have never been appealable as a matter of right. *Id.* at 1167 n. 3.

¶ 17 The August 11, 2010 contempt order issued by the trial court in this case was civil. It was not primarily punitive; it imposed neither jail time nor fines. Rather, it forbade York to file any pleading or other paper in a Utah district court without a certificate from a district judge certifying that the paper has potential merit and is not abusive or disrespectful. In addition, the order's principal purpose was coercive; it compelled York to comply with specific court-ordered litigation requirements. Finally, the sanction was contingent, permitting York to purge his contempt by "using only appropriate, non-abusive language and by filing only non-frivolous matters over the course of the next year."

¶ 18 Because the order of contempt was civil, it was interlocutory. *See id.* at 1167. It is thus not appealable as a matter of right unless it arose out of supplemental proceedings after a final judgment and would otherwise never be appealable as a matter of right. *See id.* at 1167 n. 3. As explained above, the May 28, 2009 order of dismissal is not a final judgment. The order of contempt is consequently interlocutory and not appealable as a matter of right.

¶ 19 In sum, neither the May 28, 2009 order of dismissal nor the August 11, 2010 order of contempt is final. We therefore dismiss this appeal for lack of jurisdiction. *See Loffredo v. Holt,* 2001 UT 97, ¶¶ 10–11, 37 P.3d 1070.

¶ 20 WE CONCUR: GREGORY K. ORME, and MICHELE M. CHRISTIANSEN, Judges.